# EXHIBIT 3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **HAWK TECHNOLOGY SYSTEMS, LLC**, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>**CASTLE RETAIL, LLC**, )<br>)<br>Defendant. ) | Case No. 2:20-cv-02766-JPM-tmp<br><br>JURY TRAL DEMANDED |

### ORDER GRANTING DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS

Before the Court is Defendant Castle Retail, LLC's ("Castle") 12(b)(6) Motion to Dismiss for Unpatentability Under 35 U.S.C. § 101 ("§ 101 Motion"), filed on December 23, 2020. (ECF No. 9.) For the following reasons, the Court **GRANTS** Defendant's Rule 12(b)(6) Motion.

**I.    BACKGROUND**

    **A.    Factual Background**

Plaintiff Hawk Technology Systems, LLC ("Hawk") is a Florida limited liability company with a principal place of business in Miami, Florida (ECF No. 1 ¶ 2), and Defendant Castle is a Tennessee limited liability company with its principal place of business in Memphis, Tennessee. (Id. ¶ 3). Castle is a grocery store operator with stores throughout the State of Tennessee. (Id. ¶ 4.) Hawk was formed "to commercialize the inventions of its founder, Barry Schwab," including the patent at issue in this matter. (Id. ¶¶ 9–11.) Hawk contends that Castle's surveillance program infringes on Claim 1 and Claim 6 of U.S. Patent No. 10,499,091 (the "'091 Patent"). (Id. ¶ 23.)

The '091 Patent is entitled "High-Quality, Reduced Data Rate Streaming Video Production and Monitoring System" and primarily discloses a method for remote-viewing video surveillance with multiple video sources. '091 Patent at Abstract.

At its heart, the '091 Patent discloses a "digital video production system" that allows for "direct streaming of HDTV . . . high quality data." '091 Patent at Abstract. The technology of the '091 Patent essentially discloses a method of displaying and storing digital video taken from multiple cameras. Each independent claim begins with "[a] method of viewing, on a remote viewing device of a video surveillance system, multiple simultaneously displayed and stored video images." See '091 Patent, cols. 8, 9. Claim 1 is the basis for most discussion on claim terms and provides as follows:

> 1. A method of viewing, on a remote viewing device of a video surveillance system, multiple simultaneously displayed and stored video images, comprising the steps of:
>
>> receiving video images at a personal computer based system from a plurality of video sources, wherein each of the plurality of video sources comprises a camera of the video surveillance system;
>>
>> digitizing any of the images not already in digital form using an analog-to-digital converter;
>>
>> displaying one or more of the digitized images in separate windows on a personal computer based display device, using a first set of temporal and spatial parameters associated with each image;
>>
>> converting one or more of the video source images into a selected video format in a particular resolution, using a second set of temporal and spatial parameters associated with each image in each window;
>>
>> contemporaneously storing at least a subset of the converted images in a storage device in a network environment;
>>
>> providing a communications link to allow an external viewing device to access the storage device;
>>
>> receiving, from a remote viewing device remoted located remotely from the video surveillance system, a request to receive one or more specific streams of the video images;
>>
>> transmitting, either directly from one or more of the plurality of video sources or from the storage device over the communication link to the

> remote viewing device, and in the selected video format being a progressive video format which has a frame rate of less than substantially 24 frames per second using a third set of temporal and spatial parameters associated with each image, a version or versions of one or more of the video images to the remote viewing device, wherein the communication link traverses an external broadband connection between the remote computing device and the network environment; and
>
> displaying only the one or more requested specific streams of the video images on the remote computing device.

### B. Procedural Background

On October 20, 2020, Hawk filed a complaint accusing Castle's surveillance program of infringing the '091 Patent. (ECF No. 1 at PageID 7.) Castle filed an Answer (ECF No. 10) and Rule 12(b)(6) Motion to Dismiss on December 23, 2020. (ECF No. 9). Hawk filed a Response in Opposition on February 19, 2021. (ECF No. 33.) Castle filed a Reply to Hawk's Response on March 2, 2021. (ECF No. 34.) The Court held a scheduling conference and hearing on the § 101 Motion on March 10, 2021. (ECF No. 36.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b) provides that a party may dismiss a case for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." DirecTV, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences." Id. (quoting Gregory v. Shelby Cnty., 220 F.3d 433, 446 (6th Cir. 2000)). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." Bishop v. Lucent Techs., Inc., 520 F.3d 516, 519 (6th Cir. 2008).

"Patent eligibility under § 101 is 'ultimately an issue of law' . . . but the inquiry 'may contain underlying issues of fact.'" CX Loyalty, Inc. v. Maritz Holdings, Inc., 986 F.3d 1367,

1376 (Fed. Cir. 2021) (citing Berkheimer v. HP Inc., 881 F.3d 1360, 1365 (Fed. Cir. 2018)). Patent eligibility under § 101 "'can be determined at the Rule 12(b)(6) stage' if there are no factual allegations to impede such a resolution." WhitServe LLC v. Donuts, Inc., 809 F. App'x 929, 935 (Fed. Cir. 2020) (citing Aatrix Software, Inc. v. Green Shades Software, Inc., 882 F.3d 1121, 1125 (Fed Cir. 2018)). "In the § 101 context, 'the specification alone' may suffice to resolve the patent-eligibility inquiry." Id. (citing Aatrix Software, Inc. v. Green Shades Software, Inc., 890 F.3d 1354, 1356 (Fed. Cir. 2018)).

**III.    ANALYSIS**

Thirty-five U.S.C. § 101 sets forth that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." "Eligibility under 35 U.S.C. § 101 is a question of law, based on underlying facts." SAP America, Inc. v. InvestPic, LLC, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (internal citations omitted). "Like other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." Id.; see also generally, WhitServe LLC v. Donuts, Inc., 809 F. App'x 929, 935 (Fed. Cir. 2020) ("But we have repeatedly made clear that 'patent eligibility can be determined at the Rule 12(b)(6) stage' if there are no plausible factual allegations to impede such a resolution.") (internal citations omitted); Aatrix Software, Inc. v. Green Shades Software, Inc., 882 F.3d 1121, 1125 (Fed. Cir. 2018) ("We have held that patent eligibility can be determined at the Rule 12(b)(6) stage . . . . This is true only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law.")

4

It is well-settled that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." Alice Corp. Pty. Ltd. v. CLS Bank Int'l., 134 S. Ct. 2347, 2354 (2014) (quoting Ass'n for Molecular Pathology v. Myriad Genetics, Inc., 133 S. Ct. 2107, 2116 (2013)). An invention, however, "is not rendered ineligible for patent simply because it involves an abstract concept." Id. There is an exception under § 101 for patents that apply an abstract concept "to a new and useful end." Id. (quoting Gottschalk v. Benson, 409 U.S. 63, 67 (1972)).

The unanimous Supreme Court decision in Alice provided a two-part analysis for determining whether the application of an abstract idea would be patent-eligible: (1) "whether the claims at issue are directed to one of those patent-ineligible concepts;" and (2) "whether the additional elements [of a claim] 'transform the nature of the claim' into a patent-eligible application." Id. at 2355 (quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289, 1294 (2012)). The first stage of the Alice inquiry looks "at the 'focus' of the claims" and their "'character as a whole.'" Elec. Power Grp., LLC v. Alstom S.A., 830 F.3d 1350, 1353 (Fed. Cir. 2016) (citing Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)). When reached, the second stage inquiry looks "more precisely at what the claim elements add—specifically, whether, in the Supreme Court's terms, they identify an 'inventive concept' in the application of the ineligible matter to which (by assumption at stage two) the claim is directed." Id. at 1353 (internal citations omitted).

### A.    First Alice Step: "Directed To" a Patent-Ineligible Concept

The first part of a patentability analysis under Alice requires the Court to "determine whether the claims as a whole are directed to an abstract idea." Alice, 134 S. Ct. at 2355. Hawk argues that the claims of the '091 Patent are not directed to an abstract idea, but instead, that "the patent presents a solution to a technical problem, specifically 'a multi-format digital video product system . . . capable of maintaining full-bandwidth resolution . . . while providing professional

5

quality editing and manipulation of images.'" (ECF No. 33 at PageID 219.) (citing to '091 Patent at Abstract.) Hawk also contends that making a decision on eligibility under § 101 on this patent is improper at the motion to dismiss stage because all claim construction determinations must be made in the light most favorable to the Plaintiff, and that whether or not "an 'abstract idea' is embodied by the '091 Patent is subject to material dispute between the parties." (Id. at PageID 220.) While Hawk is correct that any claim construction disputes should be resolved in favor of the Plaintiff in resolving a 12(b)(6) motion to dismiss, Hawk has not provided any terms for claim construction, nor has it shown how the construction of any such claims would render the claims non-abstract. (See generally, Id.)

### *A Method for Storing and Displaying Video is an Abstract Idea*

Abstract ideas have long been deemed patent-ineligible because "no one can claim in . . . them an exclusive right." Alice, 134 S. Ct. at 2355 (quoting Le Roy v. Tatham, 55 U.S. 156, 175 (1853)). In recent years, the Federal Circuit has further clarified what constitutes an abstract idea by focusing on the presence of a "technological improvement." See In re TLI Communications LLC Patent Litigation, 823 F.3d 607, 612 (Fed. Cir. 2016) ("We recently clarified that a relevant inquiry at step one is 'to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea.") (citing Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1335 (Fed. Cir. 2016) (contrasting claims "directed to an improvement in the functioning of a computer" with claims "simply adding conventional computer components to well-known business practices.")).

Accordingly, the inquiry in front of this court is whether the '091 Patent simply adds conventional computer components to the field of video display or is instead directed to improvement in the functioning of a computer. See, e.g., Simil, LLC v. Flexsim Software

Products, Inc., 983 F.3d 1353, 1360–61 (Fed. Cir. 2020) ("To be sure, 'software can make patent-eligible improvements to computer technology, and related claims are eligible as long as they are directed to **non-abstract improvements to the functionality of a computer**…itself.'") (internal citation omitted). Hawk contends that the '091 Patent is directed to specific improvements to the limitations of prior art by providing a solution that allows for "conserving bandwidth while preserving quality." (ECF No. 33 at PageID 221.) (internal citations omitted.) Hawk argues that the '091 Patent claims recite the implementation of this technological improvement:

> [T]he tools to be used for images not already in digital form, the parameters to be used for conversion from video source images to selected video format in particular resolutions, and the requirement of more than one set of temporal and spatial parameters to optimize the digital image for different purposes (for example, storage vs. transmission of the digital images) and different devices (for example, computing devices vs. remote viewing devices).

(ECF No. 33 at PageID 221.)

However, even using Hawk's description of the limitations, it is not clear how the claims do more than take video surveillance and digitize it for display and storage in a conventional computer system. For example, in Electric Communication Technologies, the Federal Circuit found that the functions of "monitoring the location of a mobile thing and notifying a party in advance of arrival of that mobile thing" amounted to "nothing more than the fundamental business practice of providing advance notification of the pickup or delivery of a mobile thing." Elec. Comm. Techs., LLC v. Shopperschoice.com, LLC, 958 F.3d 1178, 1181 (Fed. Cir. 2020). It further restated the lower court's findings that "business practices designed to advise customers of the status of delivery of their goods have existed at least for several decades, if not longer." Id. at 1181 (internal citations and quotations omitted); see also Elec. Power Grp., 830 F.3d 1350, 1353 (Fed. Cir. 2016) ("The focus of the asserted claims . . . is on collecting information, analyzing it,

7

and displaying certain results of the collection and analysis…and hence require[s] stage-two analysis under § 101."). Here, the claims are directed to surveillance monitoring (see '091 Patent Claim 1), which has been a part of business practices since video cameras have been available. (ECF No. 34 at PageID 240) ("[T]he asserted claims of the '091 [P]atent recite a process that video cameras have done for decades—video monitoring. . . ."). The use of improved displays and cameras does not prevent it from being directed to an abstract idea under step one of Alice.

Hawk further contends that digitizing where necessary and then converting the data using the sets of temporal and spatial parameters "change[s] the nature of the data, and courts tend to find such things to be patent eligible. . . ." (ECF No. 33 at PageID 221.) Indeed, at the hearing on March 10, 2021, Hawk's counsel identified the "temporal and spatial parameters" as the inventive concept at the heart of the '091 Patent. (ECF No. 38 at PageID 266, 288–89.) However, the claims and specification do not clearly explain what those parameters are or how they should be manipulated. (ECF No. 9-1 at PageID 67.) ("Neither [C]laim 1 nor [C]laim 6 . . . explains or limits how any computer would be programmed or provides any other meaningful technical detail for accomplishing displaying or converting functions using 'temporal and spatial parameters.'") ("[I]n the ''091 [P]atent, there is no mention of any 'temporal or spatial parameters' in the specification."). At the hearing, Hawk explained that "temporal and spatial parameters" means "essentially the frame size of the image, the number of pixels in the image [for spatial parameters] . . . and then the temporal is the frame[] rate." (ECF No. 38 at PageID 261.) In both their ordinary usage and based on the information given at the hearing, the "temporal and spatial parameters" appear similar to the image data manipulation claim at issue in RecogniCorp, LLC v. Nintendo Co., Ltd. In that case, the Federal Circuit found that a claim "directed to encoding and decoding image data" using a mathematical formula was abstract under step one of Alice.  855 F.3d 1322,

1327 (Fed. Cir. 2017) ("Adding one abstract idea (math) to another abstract idea (encoding and decoding) does not render the claim non-abstract."). Similarly, the manipulation of temporal and spatial parameters of the video files without additional concrete guidance would be a claim directed to an abstract idea under step one of Alice. See Intellectual Ventures I LLC v. Capital One Fin. Corp., 850 F.3d 1332, 1340 (holding that patent claims directed to "collecting, displaying, and manipulating data" are abstract under step one).

### B. Second Alice Step: Transforming the Nature of the Claim into a Patent-Eligible Application

Having found that the '091 Patent is directed to the abstract idea of video storage and display, the Court moves on to step two of the Alice analysis. At this stage, the Court must consider the "transformative" aspects of the claims and whether they are inventive so as to make the patent eligible under § 101. See Alice, 134 S. Ct. at 2355. A claim's elements, taken both individually and in concert as an ordered combination, must be "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." Id. (quoting Mayo, 132 S. Ct. at 1294) (alteration in original); see also Mayo, 132 S. Ct. at 1297 ("If a law of nature is not patentable, then neither is a process reciting a law of nature, unless that process has additional features that provide practical assurance that the process is more than a drafting effort designed to monopolize the law of nature itself."). "An inventive concept reflects something more than the application of an abstract idea using well-understood, routine, and conventional activities previously known to the industry." Cellspin Soft, Inc. v. Fitbit, Inc., 927 F.3d 1306, 1316 (Fed. Cir. 2019) (internal quotation marks omitted).

*The '091 Patent Utilizes Routine and Conventional Methods and No Factual Disputes Preclude Finding the '091 Patent to be Ineligible Under § 101*

In the '091 Patent, Hawk relies on routine and conventional methods for its claimed improvement in video surveillance. A claim that "contains an 'inventive concept' sufficient to

9

'transform' the claimed abstract idea into a patent-eligible application . . . must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" Alice, 134 S. Ct. at 2357 (quoting Mayo, 132 S. Ct. at 1289). A claim whose recited elements are all "generic computer elements" does not contain an inventive concept. Intellectual Ventures I LLC v. Capital One Bank (USA), 792 F.3d 1363, 1368 (Fed. Cir. 2015) (providing "a database, a user profile . . . and a communication medium" as examples of generic computer elements). Hawk contends that the claims "reference specific tools (such as an analog-to-digital converter, where necessary), specific parameters (such as three sets of temporal and spatial parameters), and even specific frame rates (such as 24 frames per second)" which provide for specific implementation of a technological improvement. (ECF No. 33 at PageID 224.) The tools used, such as the "analog-to-digital converter" and "personal computer based system," however, are not technological improvements but rather generic computer elements. ('091 Patent col. 8 ll. 34, 39.) The parameters and frame rate, considering how they are defined in the claims and specification, similarly, do not appear to be more than manipulating data (in this case, images) in such a way that has been found to be abstract. See Intellectual Ventures I LLC v. Capital One Fin. Corp., 850 F.3d 1332, 1341 (Fed. Cir. 2017) ("Rather, the claims recite . . . a series of generic computer "components" that merely restate their individual functions—i.e., organizing, mapping, identifying, defining, detecting, and modifying. That is to say, they merely describe the functions of the abstract idea itself, without particularity.").

Further, the claims of the '091 Patent, read in light of the specification, do not show a technological improvement in video storage and display because the limitations can be implemented using generic computer elements. In fact, the specification continuously references generic computer technology which can be used to implement the claims, without information on

how to actually improve upon the technology that it uses. For example, the specification states that "a generic PC-based server can easily handle a large monitoring application." ('091 Patent col. 5 ll. 44–45.)  The specification also notes that current compression schemes can be used for the compression ratios in the preferred embodiment.  (Id. col. 7 ll. 14–26.)  The specification and claims do not explain or show how the monitoring and storage is improved, except by using already existing computer and camera technology.  Claims which recite that they "gather, analyze, and display, including in 'real time'; but they do not include any requirement for performing the claimed functions of gathering, analyzing, and displaying in real time by use of anything but conventional, generic technology" do not meet the step two requirements of the Alice test.  See Elec. Power Grp., LLC v. Alstom SA, 830 F.3d 1350, 1356 (Fed. Cir. 2016).

Furthermore, Hawk's attempt to create a factual dispute with respect to what was "routine and conventional" at the time of the invention fails.  (ECF No. 33 at PageID 225.)  It necessarily follows that if the '091 Patent does not disclose exactly how to achieve the end result, then the person having ordinary skill in the art ("PHOSITA") would be left to his or her own devices in order to utilize routine and conventional methods to achieve those results.  Either the '091 Patent adequately discloses *how* to achieve the functional results of improved video monitoring and storage (it does not), or the methods are routine and conventional such that a PHOSITA would be able to determine them.

This Court reiterates the Federal Circuit's findings in Electric Power: "Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology gathering, sending, and presenting the desired information."  830 F.3d at 1355.  The Court finds that the '091 Patent does nothing more

11

than recite routine and conventional steps using off-the-shelf components. Accordingly, it does not pass muster under step two of Alice.

### IV.     CONCLUSION

Applying the two-part Alice test, the Court finds that the '091 Patent is directed to an abstract idea and does not recite an inventive step so as to transform it to patent-eligible subject matter. Furthermore, the Court finds that there are no material facts in dispute that would preclude this finding of invalidity. Castle's Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED**, this 15th day of September, 2021.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE