# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | |
|---|---|
| **CATHX RESEARCH LTD.,** | |
| Plaintiff, | Civil Action No.: 5:21-cv-00077-RWS. |
| v. | |
| **2G ROBOTICS INC., a/k/a VOYIS IMAGING, INC.,** | |
| Defendant. | |

**PLAINTIFF'S MOTION TO STRIKE UNTIMELY ELECTION OF PRIOR ART
AND TO STRIKE EXPERT REPORTS**

Plaintiff Cathx Research, Ltd. ("Cathx"), through its undersigned attorneys, brings this Motion to clarify the prior art relied upon by Defendant 2G Robotics, Inc., a/k/a Voyis Imaging, Inc. ("Voyis") consistent with the Model Order Focusing Patent Claims and Prior Art to Reduce Costs ("Model Order") as entered in this case on January 24, 2023. This Motion is necessary because Voyis issued multiple final elections after the Model Order was entered and relied upon prior art references that are omitted from each of its elections in its expert reports. In perhaps the most problematic instance, Voyis relies upon a reference never previously listed in a list of asserted prior art and not disclosed or produced during discovery.

More particularly, the multiple Final Elections served by Voyis elect different references as related to U.S. Patent 10,116,842 ("the '842 Patent"). However, the Supplemental Expert Report submitted by Voyis (the "Supplemental Invalidity Report") relies upon references and combinations of references from multiple elections and even references and combinations of references not listed in any of Voyis's Final Elections of Asserted Prior Art. Consequently, regardless of which election is operative, the Supplemental Invalidity Report relies upon unelected references. Moreover, because it is not clear which election is operative, it is not clear which references are the unelected references. Likewise, the Supplemental Invalidity Report does not clearly define combinations asserted against either Asserted Patent. Rather than clearly state and attempt to support an opinion regarding a specific combination, the Supplemental Invalidity Report frequently uses "and/or" type language to obfuscate the opinions. As a result, Cathx is left not knowing which references should be addressed in its rebuttal expert reports.

I.      **Background Relating to the Model Order and the Deadlines to Elect Prior Art**

The initial Docket Control Order entered in this case included deadlines for preliminary

1

and final elections of asserted claims and asserted prior art. *See* Dkt. 32. Likewise, the First, Second, and Third Amended Docket Control Orders also included these events, sometimes moving the deadlines as the Docket Control Order was amended. *See* Dkts. 39, 90, and 95. The following chart summarizes the election deadlines from these four Docket Control Orders:

| Event | Initial DCO (Dkt. 32) | 1st Amended DCO (Dkt. 39) | 2nd Amended DCO (Dkt. 90) | 3rd Amended DCO (Dkt. 95) |
|---|---|---|---|---|
| Date of Order | Jan. 11, 2022 | March 15, 2022 | October 7, 2022 | Nov. 8, 2022 |
| Preliminary Election of Asserted Claims | June 8, 2022 | June 8, 2022 | N/A | N/A |
| Preliminary Election of Asserted Prior Art | June 22, 2022 | June 22, 2022 | N/A | N/A |
| Final Election of Asserted Claims | Oct. 18, 2022 | Oct. 18, 2022 | Nov. 2, 2022 | Dec. 21, 2022 |
| Final Election of Asserted Prior Art | Nov. 15, 2022 | Nov. 15, 2022 | Nov. 30, 2022 | Jan. 18, 2023 |

As indicated above, events that already passed were generally not listed in subsequent amendments to the Docket Control Order. For example, when the Second Docket Control Order was entered on October 7, 2022, the parties had already exchanged their respective Preliminary Election of Asserted Claims and Preliminary Election of Asserted Prior Art so those deadlines did not need to be rescheduled or relisted.

However, the Docket Control Order, as initially entered or as amended, did not define the requirements for a Preliminary Election or a Final Election and did not, on its face, seem to require any refinement of the parties' positions from one election to the other. In Cathx's view, the reference to a Final Election either directly or implicitly required entry of the Model Order, or a similar phasing order, to define the requirements for such elections. On January 24, 2023, the Court "**ORDERED** that the Model Order Focusing Patent Claims and Prior Art to Reduce Costs (General Order No. 13-20) is entered in this matter." Dkt. 134. At that point, however, the deadlines for Final Elections had already passed. *See* Table *supra* and Dkt. 95 (setting the deadline

2

for Cathx's Final Election of Asserted Claims on December 21, 2022 and the deadline for Voyis's Final Election of Asserted Prior Art on January 18, 2023).

Both parties complied with the previous deadlines, but neither Party's Final Election conformed to the limits set forth in the as-yet-unentered Model Order. *Compare* Exhibit A, Voyis's January 18, 2023 Election of Asserted Prior Art (listing 27 separate references without identifying the patent against which any particular reference was being asserted and without asserting combinations) *with* Model Order at ¶3 (requiring a patent defendant to identify "no more than six asserted prior art references per patent . . . and no more than a total of 20 references."). On January 24, 2023, the same day the Court Ordered that the Model Order was entered in this case, Cathx served a revised Final Election of Asserted Claims to conform its election to the limits of the Model Order (*i.e.*, by electing no more than 5 asserted claims per patent). *See* Exhibit B (email from counsel). At the same time, Cathx requested that Voyis provide a Final Election of Asserted Prior Art that complies with the Model Order no later than the next day. *Id.* (notwithstanding the typographical error in the date). The next day, January 25, 2023, Voyis issued its revised Final Election of Asserted Prior Art to comply with the Model Order. *See* Exhibit C. As presented in that Final Election, Voyis asserted the following prior art combinations against the Asserted Patents (referred to by author/patentee/title):

> **U.S. Patent No. 10,116,841 Elected Prior Art Combinations**
> 1. Maki-1 in view of Madden and Hudritsch
> 2. Maki-1 in view of Madden, Hudritsch and MacDonald
> 3. Maki-2 in view of Madden and Hudritsch
> 4. Maki-2 in view of Madden, Hudritsch and MacDonald
> 5. LPP Offer For Sale[1] in view of Madden and Hudritsch
> 6. LPP Offer For Sale in view of Madden, Hudritsch and MacDonald
>
> **U.S. Patent No. 10,116,842 Elected Prior Art Combinations**
> 1. Maki-1 in view of Madden and Hudritsch

---

[1] Cathx maintains the reference to this document as used by Voyis but does not agree that the proposal submitted by 2G Robotics was an offer for sale under the relevant statute or case law.

      2. Maki-1 in view of Madden, Hudritsch and MacDonald
      3. Maki-2 in view of Madden and Hudritsch
      4. Maki-2 in view of Madden, Hudritsch and MacDonald
      5. LPP Offer For Sale in view of Madden, Hudritsch and MacDonald
      6. LPP Offer For Sale in view of Madden, Hudritsch and Gillham

*See Id.* (defining references in footnotes).

That should have been the end of it. Both parties timely served Final Elections by the deadlines set forth in the Docket Control Order and then promptly amended their prior Final Elections to be compliant with the limitations set forth in the newly entered Model Order. The Docket Control Order has been amended on three further occasions after the Model Order was entered. *See* Dkts 129, 140, and 167 (Fourth, Fifth and Sixth Amended Docket Control Orders). Neither the Fourth, Fifth, nor Sixth Amended Docket Control Order included new deadlines for exchange of a Final Election of Asserted Claims or Prior Art. *Id.* In the interim, the Court issued its revised Claim Construction Order. *See* Dkt. 165 (filed before the parties' Joint Motion to enter the Sixth Amended Docket Control Order, filed at Dkt. 166).

Notwithstanding the seemingly closed nature of the parties' respective elections, Voyis sent an email on May 24, 2023 asserting that the deadline for the submission of its Final Election of Asserted Prior Art should inherently be scheduled relative to the current deadline for dispositive motions and thus should be due on June 20, 2023. *See* Exhibit D[2] (email from counsel). Voyis did not expand upon the reasoning for calculating the deadline for exchanging Final Elections based on the deadline for Dispositive Motions. As discussed *infra*, the Docket Control Order has been amended on six different occasions, sometimes expanding and sometimes restricting the period between deadlines as dictated by the events necessitating each amendment.

---

[2] For an unknown reason, the email from counsel refers to Final Elections that were exchanged in December and seemingly ignores the Final Elections that were exchanged in January subsequent to the entry of the Model Order.

Unfortunately, Cathx was unable to inquire further regarding Voyis's logic because despite Cathx making itself available for a meet and confer to discuss the issue, Voyis simply acted unilaterally. On June 2, 2023, Voyis served a revised Final Election of Asserted Prior Art listing the following references against the '842 Patent (referred to by author/patentee/title):

> **U.S. Patent No. 10,116,842 Elected Prior Art Combinations**
> 1. Gillham in view of Madden and Hudritsch
> 2. Gillham in view of Madden, Hudritsch and MacDonald
> 3. Kaltenbacher in view of Madden and Hudritsch
> 4. Kaltenbacher in view of Madden, Hudritsch and MacDonald
> 5. LPP Offer For Sale in view of Madden, Hudritsch and MacDonald
> 6. LPP Offer For Sale in view of Madden, Hudritsch and Gillham

*See* Exhibit E (the elections regarding the '841 Patent were unchanged).

Voyis then declined to hold a meet and confer (despite providing the above elections "to facilitate good faith discussions during our meet and confer") stating that it was unnecessary because the Model Order justified a different deadline of June 8, 2023, the deadline for exchanging any supplemental expert reports necessitated by the Court's Amended Claim Construction. *See* Exhibit F (email from counsel) (quote taken from earlier in thread at email on June 2, 2023). As outlined below, under any reading of the Court's Order's the June 2, 2023 Election is untimely and should be stricken. Moreover, the June 2, 2023 Election improperly expands the scope of asserted prior art beyond what was previously disclosed in Voyis's Preliminary Election of Asserted Prior Art or any proper Invalidity Contentions.

## II.     Argument

There is little case law on enforcement of the orders relating to final elections of prior art, but the case law that does exist supports using a framework related to the similar issue of requests to amend invalidity contentions out of time. *See e.g., Allure Energy, Inc., v. Nest Labs, Inc.*, No. 9-13-CV-102, 2015 U.S. Dist. LEXIS 180304, at *4 (E.D. Tex. May 19, 2015). The Court's Local

Patent Rules and the Model Order work in conjunction to facilitate an orderly and timely exchange of information that continuously narrows the issues in dispute. First, the parties exchange Contentions that outline their respective claims for infringement and invalidity. *See* Dkt. 32 (DCO setting deadlines for Infringement Contentions by January 26, 2022 and Invalidity Contentions by March 16, 2022). As the earliest and broadest statement of the parties' positions, leave of Court is necessary to amend contentions and expand the issues in dispute. *Id*. *see also* P.R. 3-6(b) (leave to amend invalidity contentions "may be made only by order of the Court, which shall be entered only upon a showing of good cause."). After contentions, the parties were to exchange Preliminary Elections of Asserted Claims and Prior Art. *See* Dkt. 32 (DCO setting Preliminary Election of Asserted Claims for June 8, 2022 and Preliminary Election of Asserted Prior Art for June 22, 2022). In cases governed by the Model Order, the Preliminary Elections are a further refinement on the parties' respective positions and require a patent plaintiff to select no more than ten claims per patent and 32 claims overall, while a patent defendant is required to select no more than twelve prior art references per patent and no more than 40 overall. *See* General Order at ¶ 2. Finally, the parties exchange Final Elections which, pursuant to the Model Order, must be limited to no more than five claims per patent and no more than six asserted prior art references per patent (with each separate combination of asserted prior art counting as a separate reference).

      At each phase, the party is limited by its position taken in the previous phases. That is, a party cannot expand issues by citing references that were not disclosed with its Infringement Contentions when providing its Initial Election of Asserted Prior Art and likewise cannot expand the issues in dispute by electing references in its Final Election of Asserted Prior Art that were not included in it is Initial Election. *See e.g.,* Model Order at ¶ 3 (stating that a patent defendant "shall identify no more than six asserted prior art references per patent **from among the twelve prior**

6

**art references previously identified for that particular patent** and no more than a total of 20 reference.") (emphasis added).

As noted above, when faced with challenges to a party's final elections, Courts have used the framework relating to requests to amend contentions out of time. *See Allure Energy*, 2015 U.S. Dist. LEXIS 180304, at *4 ("While there is very limited case law on orders related to final elections of prior art, the issues raised in this motion are akin to those raised when a party seeks to amend its invalidity contentions out of time. This court will adapt that framework to analyze this motion.").

  A. <u>The June 2, 2023 Final Election of Asserted Prior Art is Untimely</u>

As noted above, the last date set by the Court for Voyis's Final Election of Asserted Prior Art was January 18, 2023. (Dkt. 95, Third Amended Docket Control Order). Voyis had multiple opportunities to set or reset that deadline as the Docket Control Order was further amended and failed to do so. To be clear, Cathx does not object to Voyis refining its Final Election of Asserted Prior Art on January 25, 2023 after the Court formally entered the Model Order. That refinement properly brought Voyis's election into compliance with the newly entered Model Order. However, there is simply no justification for a further final election submitted five months later, particularly without first requesting leave. As the Docket Control Order has been amended, earlier dates have dropped off for simplicity. Where an earlier date that would have expired was being extended by a subsequent amendment to the Docket Control Order, the new date was included in the amendment. *Compare e.g.*, Dkt. 90 (setting the deadline for Cathx's Final Election of Asserted Claims for November 2, 2022) *with* Dkt. 95 (entered November 8, 2022 and resetting that deadline for December 21, 2022). If Voyis wanted a new date for its Final Election of Asserted Prior Art, it could have requested one in any of the three amendments to the Docket Control Order that were

7

entered after that deadline. The Court's corrected Claim Construction Order further does not justify the untimely submission. Voyis has been aware of Cathx's proposed construction since at least November 29, 2022 (when Cathx filed its Motion for Reconsideration) if not July 20, 2022 (when Cathx filed its Opening Claim Construction Brief). Voyis should have been aware that it could lose the Motion and that the Court could adopt Cathx's proposed construction and should have prepared accordingly (*i.e.*, by amending the Docket Control Order to permit final elections after the Court's claim construction). Yet Voyis took no steps to amend the Docket Control Order to set a new date for its Final Elections of Asserted Prior Art.

Clearly, the Docket Control Oder does not support Voyis's position that the June 2, 2023 Final Election of Asserted Prior Art was timely. In an effort to justify its untimely election, Voyis now points to the Model Order itself, which states:

> By the date set for the service of expert reports by the party with the burden of proof on an issue, the patent defendant shall serve a Final Election of Asserted Prior Art, which shall identify no more than six asserted prior art references per patent from among the twelve prior art references previously identified for that particular patent and no more than a total of 20 references. For purposes of this Final Election of Asserted Prior Art, each obviousness combination counts as a separate prior art reference.

Model Order at ¶3

Voyis asserts that the June 2 Final Election was timely because it was submitted before the Supplemental Invalidity Report on June 8, 2023. However, the deadline for serving the Supplemental Invalidity Report was not "the date set for the service of expert reports by the party with the burden of proof on an issue." That deadline was January 20, 2023. *See* Dkt. 129 ("Parties with burden of proof designate expert witnesses (non-construction issues). Expert reports due. Refer to Local Rules for required information."). The June 8 deadline was merely a deadline to submit any potential supplementation to those earlier reports that a party believed in good faith

8

were necessitated by the Court's further Claim Construction Order. *See* Dkt. 167. June 8, 2023 was not a deadline for initial reports and neither party submitted an initial report on June 8.

Again, if Voyis felt that the same justification for serving a supplemental report should have justified an amendment to its Final Election of Asserted Prior Art, it should have proposed an amendment to the Docket Control Order that would have permitted a later election. Instead, Voyis served its Final Election of Asserted Prior Art on January 25, 2023 with full knowledge of what the Model Order stated and full knowledge of the claim construction briefing pending before the Court. While Voyis purported to "reserve its right" to supplement its Final Elections at a later date, a party simply cannot reserve a right it does not have. As a result the June 2, 2023 Final Election of Asserted Prior Art should be stricken as untimely.

      B.      <u>The Supplemental Invalidity Report Should Be Stricken For Failure to Conform to the Constraints of Either the January 25 or June 2, 2023 Final Elections</u>

In addition to being untimely, the June 2, 2023 Final Election of Asserted Prior Art should be stricken because it does not select references and combinations "from among the twelve prior art references previously identified for that particular patent" as required by the Model Order. In fact, because Voyis's Preliminary Elections were submitted before the Model Order was entered in this case, its Preliminary Elections were even more expansive than what should have been required by the Model Order. As noted above, Voyis's prior Elections submitted on January 18, 2023 included 27 separate references without identifying the patent against which any particular reference was being asserted and without asserting combinations. In other words, Voyis had a much larger pool of references to draw from than it would have if the Model Order were entered earlier in the case. Despite the more favorable position, Voyis still failed to comply with the Model Order's requirements. Instead, Voyis's untimely June 2, 2023 Final Elections asserted two of its permitted six combination that rely upon a primary reference (U.S. Patent No. 7,417,666 hereafter

9

"Kaltenbacher") that was not included in any previous election (either preliminary or final).

Not only was the Kaltenbacher reference not included in any previous election, it also was not produced during discovery. Rather, Voyis did not produce the Kaltenbacher reference until after hours on April 12, 2023. At that point, fact discovery had been closed for approximately three months and Cathx had already served its Final Election of Asserted Claims and its Opening Expert Reports. Each of those submissions were done in view of the scope of issues presented by the parties at the time and, in particular, the scope of prior art identified by Voyis. To permit Voyis to now change the issues in dispute would severely prejudice Cathx. Likewise, because discovery is now closed, and had been closed for approximately three months before Voyis produced the Kaltenbacher reference, Cathx is unable to conduct discovery related to the asserted reference. Again, Cathx is prejudiced by Voyis's delay. Fed. R. Civ. P. 37(c)(1) states that "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." As shown above, Voyis's failure to produce the Kaltenbacher reference is neither justifiable nor harmless.

Likewise, Voyis's production in this case demonstrates that it willfully withheld Kaltenbacher to gain an improper advantage. Along with its untimely production of Kaltenbacher, Voyis provided a document purporting to be Voyis's Fourth Supplemental Invalidity Contentions (both sent after hours on April 12, 2023, the 50th day after the Court's February 21, 2023 Order). The fact that Voyis prepared a revised set of invalidity contentions (comprising a 24-page base document and 8 exhibits totaling 625 pages) indicates that Voyis was aware of the Kaltenbacher reference for an extended period of time before producing the reference to Cathx. During that time, Voyis was relying on the reference to refine its assertions while withholding the reference to ensure

that Cathx could not do the same. This type of gamesmanship should not be rewarded by the Court.

Likewise, the purported Fourth Supplemental Invalidity Contentions are themselves untimely and should be stricken or ignored by the Court. Local Patent Rule 3-6(a)(2)(B) permits amending invalidity contentions within 50 days of a claim construction ruling if "the party opposing a claim of patent infringement believes in good faith that the Court's Claim Construction Ruling so requires." This is not an open invitation to change a party's position after every claim construction ruling or to introduce new art. *See Finistar Corp. v. Directv Group, Inc.*, 424 F. Supp. 2d 896, 901 (E.D. Tex. 2006) (explaining that P.R. 3-6(b)(2) is "intended to allow a party to respond to an unexpected claim construction by the court."). For example, it may have been proper if Voyis had disclosed and produced references A, B, C, and D but asserted invalidity based on the combination of A, B, and C in view of the Court's November 21 Claim Construction and then supplemented to instead assert invalidity based on the combination of A, B, and D in view of the Court's later Claim Construction. Here, however, Voyis seeks to introduce a wholly new reference, and thus wholly new combinations based on that reference, that was not produced in discovery and was withheld while Voyis prepared its purported Fourth Invalidity Contentions. If Voyis had timely produced the Kaltenbacher reference, Cathx may have selected different claims in its Final Election of Asserted Claims. Consequently, Cathx has been severely prejudiced by Voyis's delay and its withholding of the Kaltenbacher reference.

    C.    <u>The Supplemental Invalidity Report's repeated use of "and/or" type language in combining references makes it impossible to determine what combination is actually being asserted and whether that combination was properly disclosed in Voyis's Invalidity Contentions and Elections of Asserted Prior Art.</u>

Even accepting, *arguendo*, each of Voyis's untimely disclosures, contentions, and elections outlined above, the entire Supplemental Invalidity Report should be stricken for failure to constrain itself to those submissions. The Supplemental Invalidity Report does not assert, for example, that

11

"Reference A in view of Reference B and further in view of Reference C renders Claim X obvious for the following reasons." Rather, the Supplemental Invalidity Report asserts that one reference should be read in view of multiple further references either separately or together and then that any one of those combinations could be read in view of a further reference. For example, at ¶17 the Supplemental Invalidity Report summarizes the opinions regarding Claims 1, 4, 12, 14 and 15 of the '841 Patent as being rendered obvious by "*Maki-1* in view of *Madden* **and/or** *Hudritsch* . . . *Maki-2* in view of *Madden* **and/or** *Hudritsch* . . *LPP Offer for Sale* in view of *Madden* **and/or** *Hudritsch*." Exhibit G (bolding added). The result is nine separate combinations: 1) *Maki-1* in view of *Madden*; 2) *Maki-1* in view of *Hudritsch*; 3) *Maki-1* in view of *Madden* and *Hudritsch*; 4) *Maki-2* in view of *Madden*; 5) *Maki-2* in view of *Hudritsch*; 6) *Maki-2* in view of *Madden* and *Hudritsch*; 7) *LPP Offer for Sale* in view of *Madden*; 8) *LPP Offer for Sale* in view of *Hudritsch*; and 9) *LPP Offer for Sale* in view of *Madden* and *Hudritsch*. For Claim 13, the Supplemental Invalidity Report then asserts "[e]ach of the combinations listed above for independent claims 1 and 14 alone and as further modified by *MacDonald* or *Zheng*" resulting in 27 separate combinations asserted against Claim 13 (the 9 listed *supra* alone; the 9 listed *supra* as modified by *MacDonald*; and the 9 listed *supra* as modified by *Zheng*).

Similar conjunctive and disjunctive language is used for claims 7, 18, and 19 of the '841 Patent (*see id.* asserting the 9 combinations asserted against independent claims 1 and 14 "alone and as further modified by *Yoshiyuki* for Claim 7 and asserting the 9 combinations asserted against independent claims 1 and 14 "alone and as further modified by *Zheng*"). The result is at least 36 combinations asserted against the '841 Patent (the 9 base combinations and those same combinations further combined with *MacDonald*, *Zheng*, and *Yoshiyuki*. The Report also appears to assert at least three other "combinations" because throughout the Report Voyis asserts

12

combinations that begin with each of *Maki-1*, *Maki-2*, and the *LPP Offer for Sale* either "alone (or in combination with *Hudritsch* or *Madden*)". *See e.g.*, Exhibit G at ¶¶ 183, 187, 190, 203, 213, and 219 (regarding Claim 4 and 13 of the '841 Patent); and ¶¶ 590, 594, 598, 627, and 632 (regarding Claim 12 and 15 of the '842 Patent).

The Supplemental Invalidity Report makes the same assertions regarding other "base references" when seeming to build its combinations. *See e.g. id.* at ¶¶ 545, 565, 581, 605 (asserting "*Gillham* alone (or in combination with Hudritsch or Madden)"); and ¶¶ 551, 554, 569, 584 (asserting "*Kaltenbacher* alone (or in combination with *Hudritsch* or *Madden*)"). In other words, it is never clear whether the Supplemental Invalidity Report is asserting a combination that begins with the primary reference, the primary reference in view of Hudritsch, the primary reference in view of Madden, or the primary reference in view of Hudritsch and Madden. The situation only compounds when adding further reference. For example, when the Supplemental Invalidity Report attempts to assert an opinion regarding Claim 13 of the '841 Patent by stating that "*Maki-1* alone (or in combination with *Hudritsch* or *Madden*) in view of MacDonald discloses . . ." *Id* at ¶203, the result is at least three, and potentially four, separate combinations: *Maki-1* in view of MacDonald; *Maki-1* in combination with *Hudritsch* and in view of MacDonald; and *Maki-1* in combination with *Madden* and in view of MacDonald with the potential fourth combination being *Maki-1* in combination with *Hudritsch* and *Madden* and in view of MacDonald.

The Supplemental Invalidity Report further compounds these errors by adding additional references that are undeniably unelected, regardless of whether the June 2, 2023 Final Elections discussed above are proper. Throughout the Supplemental Invalidity Report, Voyis asserts combinations that include Zheng and Yoshiyuki, neither of which are listed in either the January 25 or June 2, Final Elections of Asserted Prior Art. *See supra*. For example, the Supplemental

13

Invalidity Report relies upon Zheng in a combination asserted against Claim 13 of the '841 Patent. *See e.g.*, *Id* at ¶¶ 17, 209, 216, and 219. Likewise, the Supplemental Invalidity Report relies upon Yoshiyuki for combinations asserted against Claim 7 of the '841 Patent and Claims 8, 9, and 11 of the '842 Patent. *Id.* at ¶¶ 17, 183, 187, 190, 533, 538, 542, 545, 551, 557, 560, 563, 565, 569, 573, 576, 579, 581, and 584. In addition to further compounding the number of combinations even further past the permissible six combinations, these references are wholly unelected and improper.

Because the Supplemental Invalidity Report relies upon cross-referencing and incorporating arguments from elsewhere in the Report, the same defects outlined above are inserted into purported combinations against other claims. In sum, the Supplemental Invalidity Report's failure to outline clear combinations, to use combinations from a proper and timely Final Election of Asserted Prior Art, and its failure to confine its arguments to positions supported by a timely and proper Invalidity Contentions renders the entire Supplemental Invalidity Report improper and the Report should be stricken in its entirety. Because the Supplemental Invalidity Report replaced and withdrew the prior Expert Report, the earlier Report is no longer operative. However, to the extent it remains viable, the same issues outlined above (except as to the newly added Kaltenbacher reference) justify striking that Report as well. That is, the initial Invalidity Report, dated January 20, 2023, also relies upon unelected references and combinations and imprecisely defines combinations to expand the number of elections beyond what is permissible under the Model Order and beyond what was elected in any Final Election of Asserted Prior Art.

D. <u>Cathx Has Been and Will Continue to be Prejudiced if the Supplemental Invalidity Report is not Stricken</u>

Throughout this case, Voyis has taken a "shotgun" approach to invalidity, constantly changing its tune to fit a new narrative and expanding rather than contracting its position. *See e.g.*, *supra* (discussing a theoretically proper supplementation to invalidity contentions following a

revised claim construction that would assert combinations from previously disclosed art as compared to Voyis's improper purported Fourth Supplemental Invalidity Contentions that rely upon a reference that was withheld from production). As a result, Cathx has taken position based on Voyis stated contentions and elections at the time they were due under the operative Docket Control Order entered in this case. For example, Cathx provided its revised Final Election of Asserted Claims on the day the Court entered the Model Order based on the contentions and preliminary elections previously submitted by Voyis. Likewise, Voyis submitted its Expert Report and Supplemental Expert Report based on the universe of timely disclosed prior art. To permit Voyis to now change its contentions and elections to assert not just new arguments, but entirely new art and combinations that were withheld during discovery, would severely prejudice Cathx.

### III.   Conclusion

At a minimum, Voyis must be constrained to only one Final Elections of Asserted Prior Art. Even if, *arguendo*, the June 2 Final Elections are proper, then the combinations that were listed in the January 25 Final Elections but omitted from the June 2 Final Elections must be stricken from the Supplemental Invalidity Report. Likewise, if the Court agrees that the June 2 Final Elections were improper, then the combinations listed in those Final Elections but not in the January 25 Final Elections must be stricken from the Supplemental Invalidity Report. Regardless of the ruling on that issue, at a minimum, the combinations relying upon Zheng and Yoshiyuki, neither of which are listed in either the January 25 or June 2 Final Elections, must certainly be stricken from the Supplemental Invalidity Report. Finally, because the Supplemental Invalidity Report is plagued by numerous uses of conjunction and disjunctive terms that make it impossible to determine which combinations are actually being relied upon, the entire Supplemental Invalidity Report should be stricken.

<div style="display:flex;justify-content:space-between;">
<div>Dated: June 27, 2023</div>
<div>Respectfully submitted,</div>
</div>

/s/ *Lance Lee*
Lance Lee
Attorney at Law
wlancelee@gmail.com
Attorney at Law
Texas Bar No. 24004762
5501 Plaza Drive
Texarkana, TX 75503
(903) 223-0276

Edward L. Bishop (admitted PHV)
ebishop@bdl-iplaw.com
Nicholas S. Lee (admitted PHV)
nlee@bdl-iplaw.com
Benjamin A. Campbell (admitted PHV)
bcampbell@bdl-iplaw.com
Stephanie N. White (admitted PHV)
swhite@bdl-iplaw.com
BISHOP DIEHL & LEE, LTD.
1475 E. Woodfield Road, Suite 800
Schaumburg, IL 60173
(847) 969-9123

*Counsel for Plaintiff Cathx Research Ltd.*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are June 27, 2023. Any other counsel of record will be served by electronic and/or first-class mail.

/s/ *Lance Lee*
Lance Lee